UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

SHEA CONCRETE PRODUCTS, INC.,

Defendant.

Case No. 1:21-cv-10561

## CONSENT DECREE

WHEREAS, Shea Concrete Products, Inc. ("Shea") operates a concrete products facility at 87 Haverhill Road, Amesbury, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Shea has discharged industrial stormwater contaminated with sediment and other pollutants from the facility into wetlands connected to the Merrimack River ("Merrimack River Wetlands"), without complying with the federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("MSGP"), in violation of the Federal Clean Water Act, 33 U.S.C. §1331(a), *et seq.* (the "Clean Water Act" or "the Act");

WHEREAS, on August 6, 2020, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Shea ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Shea, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

1

WHEREAS, today the Attorney General filed a complaint against Shea in the United States District Court, District of Massachusetts;

WHEREAS, Shea denies the allegations in the Commonwealth's Complaint;

WHEREAS, the Commonwealth and Shea (collectively, the "Parties") have reached an agreement to resolve the Commonwealth's claims against Shea without its admission of liability for the allegations in the Complaint; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law it is ADJUDGED, ORDERED, AND DECREED, as follows:

## I. DEFINITIONS

1.    "Discharge" when used herein shall have the same definition provided in the MSGP at Appendix A Section A.1 – DEFINITIONS.

2.    "Pollutant" when used herein shall have the same definition provided in the MSGP at Appendix A Section A.1 – DEFINITIONS.

3.    "Stormwater Discharges Associated with Industrial Activity" when used herein shall have the same definition provided in the MSGP at Appendix A Section A.1 – DEFINITIONS.

4.    "Discharge Point" when used herein shall have the same definition provided in the MSGP at Appendix A Section A.1 – DEFINITIONS.

2

## II. JURISDICTION AND VENUE

5.     This Court has jurisdiction over the parties and the subject matter of this action

pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and

28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the

District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33

U.S.C. § 1365(c)(1).

6.     The Complaint alleges facts that, if proven, would constitute good and sufficient

grounds for the relief set forth in this Consent Decree.

## III. EFFECTIVE DATE

7.     The effective date of this Consent Decree ("Effective Date") shall be when the

Court enters the Consent Decree on the docket.

## IV. PARTIES BOUND

8.     This Consent Decree shall constitute a binding agreement between the parties, and

Shea consents to its entry as a final judgment by the Court and waives all rights of appeal upon

its entry on the docket. If the Court declines to enter this Consent Decree on any ground except

one related to form, this Consent Decree is voidable at the option of either party within fourteen

(14) days of the Court's decision. If, on the other hand, the Court determines that substantive

modifications to this Consent Decree are necessary prior to the Court's entry of it, the parties

shall enter into good faith negotiations to discuss the modifications, and this Consent Decree

shall be void unless the Commonwealth and Shea agree otherwise in writing within fourteen (14)

days of the Court's decision.

9.     The provisions of this Consent Decree shall apply to and bind Shea and any

person or entity acting by, for, or through Shea, including Shea's managers, directors, officers,

3

supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with Shea who receive notice of this Consent Decree.

10.     Shea shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Shea shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract, entered into after the Effective Date of the Consent Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, Shea shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

11.     For three (3) years following the Effective Date, Shea shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within three (3) years of the Effective Date, Shea shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant or its managers, officers, directors, agents, successors, assigns, heirs, and/or servants of any obligation under this Consent Decree, unless:

        a.     the transferee agrees, in writing, to undertake any outstanding obligations required by Section V ( Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records), and to be added

4

as a Defendant or substituted for the Defendant as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

b.  the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

c.  the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this paragraph shall constitute a violation of this Consent Decree.

12.  Shea shall not violate this Consent Decree, and Shea shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Shea shall not raise as a defense the failure by any of Shea's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

13.  In addition to any relief specifically provided in this Consent Decree, Shea understands and agrees that violations of this Consent Decree may by punishable by contempt pursuant to an appropriate civil contempt proceeding.

14.  If, prior to Shea complying fully with the requirements of this Consent Decree and the Commonwealth's release of Shea from liability for the specific legal claims alleged against it in the Complaint pursuant to Section IX (Effect of Consent Decree), Shea ceases operations at the Facility such that there will no longer be Stormwater Discharges Associated with Industrial Activity from the Facility, implements the necessary sediment and erosion

5

controls per Section 2.1.2.5 of the MSGP, and submits a valid Notice of Termination ("NOT") to the EPA pursuant to Section 1.3 of the 2015 MSGP and Section 1.4 of the 2021 MSGP, and has provided the Commonwealth with a copy of the NOT, and the NOT is processed by EPA then Shea will no longer be responsible to comply with Sections VI (Injunctive Relief) and VII (Facility Access and Submission of Records) of the Consent Decree. The filing of a NOT will not absolve Shea of its obligations under Section V (Payments) of the Consent Decree.

## V. PAYMENTS

15.    Within fifteen (15) days of the Effective Date, Shea shall pay to the City of Amesbury the sum of thirty-two thousand five hundred dollars ($32,500) to fund projects to improve water quality in the Merrimack River Watershed. The payment shall be made by certified check, treasurer's check, or bank check and sent to the City of Amesbury, 62 Friend Street, Amesbury, Massachusetts, 01913. Evidence of Shea's payment to the City of Amesbury shall be contemporaneously provided by Shea to the Commonwealth pursuant to Section XIII (Notices).

16.    By August 1, 2021, Shea shall reimburse the Attorney General's Office in the amount of twenty-five thousand dollars ($25,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General

6

## VI. INJUCTIVE RELIEF

17.     Shea agrees to operate the Facility in compliance with the applicable requirements

of the MSGP, including any amendments thereto, and with the Federal Clean Water Act.

18.     <u>Stormwater Discharges Associated with Industrial Activity</u>

    a.     *Additional Pollutant Reduction Measures.* Shea will direct and control

        Stormwater Discharges Associated with Industrial Activity at the Facility to

        minimize pollutants "to the extent achievable using control measures

        (including best management practices) that are technologically available and

        economically practicable and achievable in light of best industry practice."

        *See* MSGP Section 2.0.  Shea will take the following actions by the

        following dates:

        i.     Within two (2) months of the Effective Date, Shea shall re-grade and

            install a catch basin in the truck parking area, formerly part of DA-1,

            to control Stormwater Discharges Associated with Industrial Activity

            from the truck parking area consistent with the MSGP. *See* MSGP

            Section 2;

        ii.     By the Effective Date, Shea shall ensure that routine Facility

            inspections are conducted quarterly in compliance with Section 3.1 of

            the MSGP which requires, among other things, qualified personnel to

            make visual inspections of the Facility's discharge points and to look

            for control measures needing replacement, maintenance, or repair;

        iii.     By the Effective Date, Shea shall eliminate all Stormwater Discharges

            Associated with Industrial Activity from the Facility that do not flow

through an Outfall properly identified and described in Shea's Notice

of Intent and SWPPP; and

iv.   By the Effective Date, Shea shall control Stormwater Discharges

Associated with Industrial Activity through the Outfalls identified and

described in Shea's Notice of Intent and SWPPP. *See* MSGP

Section 2.

b.   *Monitoring*. Per the MSGP, Shea shall monitor Stormwater Discharges

Associated with Industrial Activity through the Outfalls identified and

described in Shea's Notice of Intent and SWPPP. *See* 2015 MSGP Section

6.0 and 2021 MSGP Section 4. In addition to the permit requirements, Shea

shall:

i.   monitor for the sector-specific benchmark parameters established by

the MSGP for a minimum of one quarter after the Effective Date at

Outfall 001;

ii.   monitor for the sector-specific benchmark parameters established by

the MSGP for a minimum of two quarters after the Effective Date at

Outfall 002; and

iii.   prepare video recordings of the sampling events for the first quarter

after the Effective Date at both Outfall 001 and Outfall 002 and shall

provide the Attorney General's Office with copies of such video

recordings in accordance with Section XIII (Notices), below. The

video recordings shall include an accurate record of the time and date

8

on which they were recorded/taken. Each video shall make clear and
evident, through visual imagery:

     (a)    the date and time on which it was recorded/taken,

     (b)    the location or locations at which it was recorded/taken,

     (c)    the persons present during the sampling,

     (d)    the location of the pipe or conduit being sampled from,

     (e)    the manner in which each sample is taken, and

     (f)    the sample or samples taken.

If the video imagery is insufficient to verify items (a)-(f) above, then the Attorney General's
Office will have the right to be present during or require the video recording or photographing of
another representative sampling event in a subsequent calendar quarter of its choosing.

## VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

     19.    Shea shall permit the Attorney General's Office to visit the Facility during normal
daylight business hours during each year for the three (3) years following the Effective Date,
provided that the Attorney General's Office provide at least twenty-four (24) hours of prior
notice. During any site visit, the Attorney General's Office shall have access to and permission
to copy any documentation required to be kept on site by the MSGP and may collect samples and
take photos at the Facility.

     20.    For a period of three (3) years following the Effective Date, Shea shall provide
the Attorney General's Office with the following documents in accordance with Section XIII
(Notices), below:

     a.    copies of all documents Shea submits to EPA, the Commonwealth of
         Massachusetts, and/or the Town of Amesbury concerning Shea's stormwater

9

controls or the quality of Shea's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the MSGP. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

b. all maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of Shea's receipt of a written request by the Attorney General's Office;

c. written notice of any changes made to any of Shea's stormwater control measures that are described in the SWPPP pursuant to 2015 MSGP Section 5.2.4 and 2021 MSGP 6.2.4, within two (2) weeks of completion;

d. written notice of any changes made to Shea's stormwater control measures pursuant to 2015 MSGP Section 5.3 and 2021 MSGP Section 6.3, within two (2) weeks of completion;

e. current copies of Shea's SWPPP within three (3) business days of a request by the Attorney General's Office; and

f. laboratory reports and analytical results of stormwater sampling performed by or for Shea within ten (10) business days of receiving the reports.

21. Any information provided by Shea may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

22. The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws,

10

regulations, or permits, nor does it limit or affect any duty or obligation of Shea to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTERESTS AND COLLECTIONS

23.        If any payment required pursuant to this Consent Decree is late or not made, Shea shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum pursuant to G.L. c. 321 § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

24.        Upon compliance by Shea with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Shea's liability for the specific legal claims alleged against it in the Complaint, and (b) the Commonwealth shall release Shea from liability for the specific legal claims alleged against it in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

25.        Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Shea, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree

11

or any permit or other approval issued by the Massachusetts Department of Environmental

Protection or EPA relative to the Facility.

      26.     This Consent Decree is not a permit, or a modification of any permit, under any

federal, state, or local laws or regulations. Shea is responsible for achieving and maintaining

complete compliance with all applicable federal, state, and local laws, regulations, and permits;

and Shea's compliance with this Consent Decree shall not be a defense to any action commenced

pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney

General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in

any manner that Shea's compliance with any aspect of this Consent Decree will result in

compliance with provisions of any federal, state, or local law, regulation, or permit.

      27.     Nothing in this Consent Decree shall be construed to create any rights in, or grant

any cause of action to, any person not a party to this Decree.

## X. DISPUTE RESOLUTION

      28.     If the Attorney General's Office has determined that Shea is in violation of this

Consent Decree, the Attorney General's Office may request, in writing, that Shea meet and

confer within seven (7) business days of receiving written notification of such request from the

Attorney General's Office, for the purpose of determining whether a violation has occurred and

developing a mutually agreed upon plan, including implementation dates, to resolve the dispute.

If the parties fail to meet and confer, or the meet and confer does not resolve the dispute and

result in a mutually agreed upon plan, the Commonwealth shall be entitled to pursue applicable

remedies, including filing a motion for available judicial relief from the Court. Nothing in this

paragraph prevents the Commonwealth from seeking judicial relief without first requesting that

Shea meet and confer.

## XI. FORCE MAJUERE

29.     Any request to extend the deadlines set forth in Section VI (Injunctive Relief) shall be made in writing to the Attorney General's Office, prior to the expiration of the deadline. Upon receipt of a timely request for an extension under this Paragraph, the Attorney General's Office may, in its discretion, grant additional time if it is persuaded that the delay in performance is the result of circumstances beyond Shea's control. Shea shall bear the burden of demonstrating that (a) the delay in performance is the result of circumstances beyond its control and (b) the delay could not have been prevented or avoided by the reasonable exercise of due care, foresight, or due diligence on the part of Shea. In its written notice of delay to the Attorney General's Office, Shea shall state the anticipated length of delay, the cause of the delay, and the steps or measures it will take to prevent or minimize the delay. Shea shall adopt reasonable measures to avoid or minimize the delay. Shea's failure to comply with the notice requirements of this Paragraph shall constitute waiver of its right to request an extension of time with regard to any delay, and a waiver of any right to relief from the deadlines in Section VI (Injunctive Relief). The Attorney General's Office will not seek to collect any interest or expenses allowed under this Consent Decree for an approved period. Except as excused by the Attorney General's Office pursuant to this Paragraph, delay on the part Shea's contractors, subcontractors, or consultants shall be attributable to Shea and financial inability or increased costs shall not constitute a force majeure condition.

## XII. MISCELLANEOUS

30.     Shea understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Shea may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

13

31.     Shea shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it.

32.     Nothing in this Consent Decree shall prevent Shea from taking any action otherwise required by law.

33.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

34.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

35.     Consistent with paragraph 8, Shea is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

36.     Signature of the parties transmitted by scanning and email are binding.

### XIII. NOTICES

37.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Emily K. Mitchell, Attorney
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Emily.Mitchell@mass.gov

For Shea:

Glenn A. Wood, Attorney
Rubin and Rudman, LLP
53 State Street, 15th Floor
Boston, MA 02109
gwood@rubinrudman.com

14

Greg Stratis
President
Shea Concrete Products
87 Haverhill Road
Amesbury, MA 01913
gregs@sheaconcrete.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XIV. INTEGRATION

38.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XV. MODIFICATION

39.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XVI. AUTHORITY OF SIGNATORY

40.     The person signing this Consent Decree on behalf of Shea acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind Shea to the terms of this Consent Decree, and (c) that, to the extent necessary, Shea's managers,

15

directors, officers, and shareholders have consented to Shea entering this Consent Decree and to its entry as a Final Judgment.

## XVII. RETENTION OF JURISDICTION

41. The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

42. Upon approval and entry of this Consent Decree by the Court this Consent Decree shall constitute a Final Judgment of the Court.

16

OFFICE OF THE ATTORNEY GENERAL
MAURA HEALEY, ATTORNEY GENERAL

By: _____
Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2642
Nora.Chorover@mass.gov

Dated: 4/2/2021

SHEA CONCRETE PRODUCTS, INC

By: _____
Greg Stratis, President
Shea Concrete Products, Inc.
87 Haverhill Road
Amesbury, MA 01913

Dated:   03/31/2021

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____
United States District Court

Dated: _____

17